Case 13-1405, Nicholas Roberson v. J. Torres. Argument not to exceed 15 minutes per side. Mr. Dean for the appellate. Good morning, your honors. May it please the court, my name is Michael Dean, the Michigan Attorney General, on behalf of the defendant, Appellant James Torres. With the court's permission, I'd like to reserve three minutes for rebuttal, if you may. There are two issues on appeal where the district court erred, and judgment should be, or qualified immunity should be granted to Officer Torres. The first, this court's opinion in Peterson v. Johnson that came out last year, in which findings of fact in a misconduct hearing are given preclusive effect, essentially renders all of the district court's findings that there were questions of material fact inapplicable. I want to talk to you a little bit about Peterson. Sure. I looked at it closely this morning, and Peterson never says, does he, that all, the results of all such hearings are given preclusive effect, does he? It makes a distinction between actual findings of fact in the hearing versus legal conclusions. There's more factors it considers, though, correct? Yes, your honor. And one of those, it considers certainly the procedural safeguards that are attendant to such hearings. Yes, your honor. But it also, the decision also appears to be based on consideration of matters that are peculiar to the particular proceeding, correct? Sure. And one of those is the hearing of evidence, correct? Yes. Consideration of evidence. Yes, your honor. In this particular case, the evidence that is in question, on which the factual finding was based, was not in fact considered by the hearing officer, as best we can tell. Would that be right? Well, as best I can tell from reading the findings of the hearing officer, the hearing officer decided in fact not to consider the evidence that is the subject, that's pertinent to this appeal. Is that right? Well, I would take issue only in the standpoint that the actual misconduct hearing report discussed that Mr. Roberson was not cooperative in the hearing and ultimately had to be removed from the hearing room. But the fact was, they took the statements from the officers themselves and from the critical incident report that was prepared, that Mr. Roberson was awake and heard the order. I guess the evidence I'm referring to is the video. I'm sorry? Isn't there a video? There is a video. He should have told us whether he was standing at the window or asleep with a blanket over his head, and that evidence does not appear to have been considered by the hearing officer, as best I can tell you. Well, the only video that exists is the one that the officers took in the hallway, and the only person you can see at the cell door is Officer Torres speaking to Mr. Roberson. You hear him or you can see him. So that would go to the question of whether it would have mattered if the hearing officer had viewed the video. I mean, it really goes to the question of how pertinent it was, but it doesn't go to the question of whether the hearing officer actually viewed that video. Yeah, and in fact, the officer, and I'm not particularly clear on whether the hearing officer actually viewed the video or not. I know they didn't show it to Mr. Roberson, I believe. I can't remember. I have to look for it. The document says, we have the hearing officer's report that just says, prisoner made no prior request for video. His request is denied. He did not reasonably cooperate, and it certainly says nothing about him in fact looking at the video. Right. At that point if he had, you would expect to say, nevertheless, in abundance of caution, I looked at the video. He didn't. The video actually does exist. We witnessed it at our office. One of the key distinctions I think that Peterson makes is that had Mr. Roberson appealed this to the state court to overturn the conviction, that would have been preserved as part of the state record. And of course, the video was preserved. We do in fact have it. It wasn't submitted as part of the summary judgment because we relied on other evidence for the motion for summary judgment. But I think the key factual distinctions here and why it applies in this case is, the district court held that the key issues of material fact were a couple of things. One, a question of fact as to whether there was no disturbance at the time involving significant risk to the safety of staff and prisoners, that Torres' action was not a response to a disturbance or disobedience by Roberson, but an attempt to wake him, which may not have been in good faith and perhaps motivated by the malicious purpose of causing harm. And the second question of material fact that the district court found was whether Torres made any effort to temper the severity of his action by first attempting to determine whether he was awake or merely fainting asleep. Now, the reason Peterson makes these findings of questions of fact inapplicable going forward is the fact that the hearing officer found that he was awake, that he responded to Officer Torres and told him, hey, you can't make me go to health care, and essentially that justified the action of them using chemical agents. Counsel, let me ask you, there's this prior interaction where Roberson is clearly up and awake and not complying. I was trying to figure out the timeline, because they talk about it being a first shift, but Officer Torres is there both times. Does the record indicate that 20 minutes earlier, 3 hours earlier, 8 hours earlier? I think Mr. Roberson refers to it both in his complaint, and if you look at the deposition that was submitted as part of his response to the motion for summary judgment, there is testimony there, I believe, where he indicates that all through the morning, he was awoken several times by officers. The actual incident is noted on the misconduct report at the time. I believe it was early afternoon. As I understand it, one of the people says something like, at 1425, we got a call or we assembled a team. At 1445 is when everything happened. But I guess part of what's fuzzy on it is, was the call to assemble the team at 1425 because they had just that minute had his noncompliance, or was it, quote, a different shift? I believe what happened was they went to the door because he was supposed to go in a medical room, the psychiatric care off-site. They gave the order. He told the officers, no, I'm not going to do it. They had to go through the process of assembling the team in full riot gear and shields. But the point I'm making is, is that sort of a continuous, or was it like he was noncompliant at 9 in the morning? The video itself, and I know it's not part of the record, you actually see Torres standing at the door saying, Torres, you have to come to the door. We have to take you. And then you hear something, but it's muffled because of the door. And then a few moments later, Torres administers a short- So that's all what happens at 245 in the afternoon. Right. Is there video or other statements that clearly show when was his original refusal? No, no. So you don't know it any better than I do. The only thing I could point to would be the actual misconduct report that formed the basis of the misconduct. It doesn't say. And he would put the time of the incident up at the top. Okay. I'll go again. Sure. There's abundant case law that establishes the chemical agent is a lesser or more preferred option rather than charging into a cell to try to overcome a prisoner for the safety of the prisoner himself and the officers. And second of all- But that's okay if he's not sleeping. Right. That's the basic fact. And here's the critical distinction, Your Honor, and I believe this is where the disreport went wrong. If it was a case that Mr. Roberson was simply lying there with his eyes closed, the officer might have been in a different vacuum. But in this particular case, Mr. Roberson admits in his deposition that he was completely covered with a blanket. Thus, the officer, anyone looking in, would not be able to ascertain whether he was asleep, fainting asleep, or the alternative, that he was unconscious and in need of immediate medical attention. If he needed medical attention, spraying him with decoction is not the best thing to do, is it? I would also say that five officers charging in a full riot here as well could be markable because they would physically have to grab him and take him down to the ground before they're not going to pull back the blanket and try to poke him and ask if he's awake. They'd come in full force. I believe I cited a case. It was the Eighth Circuit case, Stenzel v. Ellis, in a similar situation where a prisoner was completely covered. They found qualified immunity for the officers who actually made a cell flash. They didn't even take the preliminary step of using a chemical laser to obtain compliance. I believe the Sixth Circuit has ruled numerous times in Caldwell v. Moore that prisoners cannot choose to obey which orders they're going to. Officers have a legitimate interest, and I think this gets to a larger policy issue than the problem of the district court's order. When she denied qualified immunity for the brief use of chemical agent to obtain compliance, what she's telling future officers is there's three scenarios that they can do. They can either use chemical agent, they can charge full force into the cell with a number of officers, or they can walk away and come back later and see if he wakes up to obey the order. But the problem there is, in this case, he was completely covered with a blanket. So if he's covered with a blanket and he is unconscious and in need of medical attention, the act of simply walking away would subject the officers to liability under the vehicle penalty. Without the video, you don't know exactly what happened to him. One view would be to holler more loudly, beat on the cell door, and see whether he seems to be serving. But that would only work in one of the three scenarios, if he was actually asleep. The other scenario would be that he's unconscious or fainting asleep. He may twitch, he may be shabby, he may twitch more. Okay, I understand that there are different ways to do it. Let me ask you this. If, suppositionally, we were to, in effect, deny your appeal for one of a variety of reasons, one of which might be that this whole Peterson issue wasn't really developed as to exactly how the hearings went, would you feel, and I'll ask your colleague the same thing, that you could then make a motion and develop, was this a full and fair hearing on all of the factors that are talked about? Well, the problem with the full, fair, and hearing portion of Peterson is that in this case, Roberson made no attempt ever to appeal the misconduct conviction. He got the conviction and then let it go, and then shortly thereafter filed the lawsuit that we're currently on. So you think that's conclusive as to there being sort of like, see, there's a difference between exhaustion, which I would say you're 100% right on, and whether there was a full and fair hearing. I believe there's language in Peterson that discusses even where a prisoner does not fully avail of himself of the state remedies of appealing the decision, that's not enough to say that he didn't have a full and fair hearing. No, I understand that. But the reverse is you seem to be saying because he didn't appeal, he must have had a full and fair hearing. Well, he just didn't avail of himself of a full and fair hearing. Well, but that sounds like you. Okay. Anything else from my colleague? Thank you. All right, we'll have your time for rebuttal. I please the court on behalf of Plaintiff Nicholas Roberson, Thomas Freeman. One afternoon, a plaintiff awoke and found himself choking and unable to breathe. The cause of this was action taken by a defendant who spurred a chemical agent to reclaim the plaintiff's confined cell. At the time of the action, as the district court found, there was no disturbance. There was no need to wait, plaintiff. The district court found? The district court found there was a way to do it? Try it. There's a question of fact as to that issue. It's a question of fact as to it, not that you know that that's the case. Exactly. The question here is qualified immunity. That standard is known. Regarding the first problem, which asks whether the facts were pledged by a plaintiff from out of a constitutional violation, the district court held that the facts, as set forth by the parties, take an electable spherical to the plaintiff to create a genuine issue of material fact that the use of a chemical agent on the plaintiff as it's the Peterson case stated. So that's an interesting question. I'm going to jump to Clarke's point. The way Peterson fits into this equation is that it comes in as a constitutional inquiry itself, whether the use of force was excessive. In this interlocutory appeal, the defendant asked his court to re-evaluate the district court's holding that a genuine issue of material fact exists because of Peterson. The plaintiff is not saying that Peterson doesn't apply or that the district court wouldn't be free to apply it on demand, but what the plaintiff is arguing is that this court cannot, on interlocutory appeal, revisit the district court's holding that a genuine issue of material fact exists simply because of Peterson. It's the law, and there wouldn't be any fact. Well, certainly there is. Let's examine Peterson for a second. Peterson holds that a fact found as part of a major misconduct hearing is given preclusive effect, provided that that fact was necessary to the hearing officer's determination. Here, in the record, plaintiff or defendant, for that matter, doesn't provide us with what statute or what prison reg was violated. It does say disobeyed a direct order, and when I looked that up, it's a refusal or failure to follow the valid or reasonable order of an employee. The hearing officer concluded that Peterson – or, I'm sorry, that the plaintiff only disobeyed a direct order. It did not – and that's the only fact that is going to be given preclusive effect. And here – Well, if he failed to follow an order, that means he's a money catcher, but he can't be sleeping and fail to follow it. Not necessarily. He could have been given an order. The statute says failure to follow. He could have been sleeping and failed to follow that order. Now, regarding the hearing officer's factual affairment that he was awake and heard the order, that is not given preclusive effect under Pearson. Well, it really depends on whether we characterize this issue of preclusion as a legal question that we can determine in the context of the interlocutory appeal or whether we categorize it as just a part of the overall fact-finding process in the district court or the process of finding a genuine issue of material fact, which would be, one, an issue that the defendants have not appealed. Right. So it's – you've got to solve a characterization problem before you solve the application of Peterson problem. Right. Before you know who's going to, in the first instance, decide the application of Peterson. Yes. And on that note, this is an interlocutory appeal. If Peterson applies, and we submit that it does, not in this court but certainly in district courts, but only to the questions of fact of what the trier fact would be allowed to find, Mitchell holds only on the question of law related to the alleged violation. So you don't find anything in this case that would exclude it from Peterson's breach? Say that again, please. You don't find anything in the facts of this case – and I'm not talking about the facts pertaining to the incident, I'm talking about the disciplinary proceeding facts that would exclude it from Peterson's breach? Well, certainly there's going to be an issue that should be litigated in the district court as to whether Peterson applied. Didn't he have a full – Why don't you just – why don't you just tell me you conceded? I conceded that if Peterson's standards are met, it could be applied in the district court. But like you said, we need to have an opportunity to see what was necessary to the determination of the major misconduct here. We also need to see – I understand you. I just thought you were – No, the case would apply assuming its standard is met. Would it be a matter for the district court to go back and find some matter of law under the application to use in this case? The district court would have another hearing with a hearing officer and all that? No. If you examine what was done at the hearing, at the major misconduct hearing, it could see whether the Peterson standard is outlined by this court as met, and then it could – those facts that were found would have reclusive effect. The district court can't retry that part. That's what Peterson said. Correct. Correct. So, on the clearly established – the only viable question that I submit to you that's before the court is the legal question. What are the legal norms allegedly violated by the defendant clearly established at that time? The standard is twofold, whether the violation was sufficiently obvious under general standards of constitutional care, or whether that violation is shown by the failure to adhere to a particular body precedent. Under both standards, the violation was clearly established. On the first, it goes without saying that the unjustified striking or beating or infliction of bodily harm upon a prisoner constitutes excessive force. As pledged, the plaintiff was in solitary confinement. There was no need to wake him, and there was no need – there was no disturbance, there was no concern for safety. Thus, on these facts, the defendant seems to have, again, wanted to transport him to the hospital, and there seems to be some basis for that, either in terms of a hunger strike or something else. So the fact that he wasn't causing a disturbance doesn't mean that they weren't entitled to transport him to the hospital, does it? But on plaintiff's facts, which must be assumed as true in this interlocutory appeal, there was no need to rouse him. There was no need to wake him. He was, quote, fully functioned. Thus, there would be no need to leave him. His fact – his fact is that he says there was no need to take him to the hospital. That's correct, and that is taken as true for purposes of this appeal. The correctness of plaintiff's facts must be assumed. If we're going to assume, we're going to only get to the very legal question of whether those facts, as pled, were clearly established. Otherwise, we're examining the merits, which is not proper in this interlocutory appeal. Did the court say that there was a genuine issue of material fact as to that point? As to the order? As to whether there was a reason to take him to the hospital. No, the district court – and it's interesting to note – the district court did not concern itself with whether the order was given, whether it was a valid order, whether it was a reasonable order. It just – on plaintiff's facts, plaintiff was sleeping. There was no need to assume. So then the question about the hospital, whether he was okay to take him to the hospital, that's irrelevant at this point, because the district court didn't assume that he was in a good order. Right, and okay. It would sound like you were pressing that he was entitled to follow the family's saying, which is not your case. Your case is he was asleep, and therefore he couldn't do it. Right, and – well, not only that, but there was also no need for him to be taken to the hospital on his facts. He said it was fully functioning. But did the court – see, the difference between his facts and what the district court assumed is otherwise you can claim all kinds of things, and the district court can say there is no genuine issue of material fact as to those, and you seem to say you still have to assume the prisoner's side of those facts. I thought it was only the facts where the district court says this is why I'm denying qualified immunity. Yes. I mean, I would submit to you both. I mean, we're going to assume for the purpose of the complete legal argument, we're going to only assume the correctness of his facts. On the qualified immunity standard, as those facts show, there was no reason to use force. The force used was completely unjustified. Moving on to the particularized body precedent, this court cited with approval of the court's Seventh Circuit decision in Soto v. Dickey, where it was held that it was a violation of the Eighth Amendment to use mace or other chemical agents in quantities greater than necessary. Here, as we discussed, the plaintiff was sleeping. There was no need for application for force. Thus, any quantity of chemical sprayers was a quantity greater than necessary. The plaintiff defended here cited the case of the Eighth Circuit's decision in Stencil, and that decision comes from outside this jurisdiction and holds that there was no violation of the Eighth Amendment. It is important to consider the procedural posture of that case. That came up on the defendant's grant of the district court's summary judgment to the defendant, so they were examining the constitutional inquiry, not just the qualified immunity inquiry that we are doing here. So it's a completely procedural posture. Differently procedural posture. Here, there was simply no need to use a date to avoid a dangerous situation. The plaintiff was sleeping. There was no disturbance. The plaintiff did not serve as a direct staff, other inmates, or anybody else. You admit that if the proof wasn't there that your client refused to obey a legal order, he was fine with it and they couldn't spray? I do not concede that. You don't concede that? No. The context with which the order was given must be considered. In the ordinary circumstance, an officer's decision must be made with haste, under trusting circumstances. But here, that was simply not the case. So absent a need for spraying him, there would be – there's no justification for the use of chemical spray, simply because he disobeyed an order. Is there grounds for spraying him if we disobey even the simplest order? Can the prison officials use force? Do you admit that they had a right to come in there with right gear to get him out of his cell? If warranted on the facts, which I don't believe are here, but this also – Is this true that this case is valid? No, I don't think it is. And I think that also goes to the reasonableness of the inquiry, which is more – concerns more the excessive force inquiry, the Hudson factors, which are not at play. Those facts cannot be decided on during a locatory appeal. That is going to be an issue for the trier of facts to decide. So I thank you for your time. Thank you. Thank you, Counsel. Three minutes before we go. Thank you, Your Honor. I'd first like to address Counsel's argument that this is not right for a judgment on an interlocutory appeal. The Johnson v. Jones case that they're citing was a case where three officers were arguing the insufficiency of the evidence that should have denied him qualified immunity. In that particular instance, because they were arguing the question of the facts, we weren't there. And the plaintiff said that they were during his alleged assault. They found – the Supreme Court found that that's not right for appeal on an interlocutory appeal. The difference here is we're not contesting his version of facts because at the time we wrote the summary judgment motion, for purposes of summary, Peterson wasn't issued. What we said is even accepting his facts as true, the key distinction that the report recommendation recognized that the district court denied was that there was a factual distinction over whether he was completely covered or whether he was not. And on those facts, which we accepted as true for the purpose of the summary argument, the case law supports the idea that the officers had to take some action because they gave him an order. He was completely covered. They can't simply walk away, as I discussed before, because he could have been in medical distress and subject themselves to liability. And why this is appropriate for this court to rule on is assuming that Peterson, in mind, doesn't apply in this case, it does matter the fact of whether he was covered. And because he was covered and the officers could not ascertain that, which the report and recommendation also pointed out, he had a plausible reason to use the gas or chemical agent on Mr. Ferguson because of the disobeying of the district court. So that's an argument that independent of Peterson, it was not clearly established or it wasn't correct that if a person who was completely covered by a blanket is part-launched. And that's where the Stenzel v. Ellis case came in because that prisoner, the Stenzel v. Ellis, the 8th Circuit case, that's where we argued that on summary motion, that this is a completely different scenario where a prisoner is simply lying there with his eyes closed versus being completely covered and officers aren't able to determine whether he's pretending to sleep, is in a medical emergency, or is asleep. Does it make any difference either way, the prior interaction where he had said, you know, I'm not going to go, you can't take me? Well, it matters if Peterson applies because that was the fact, finding a fact with the hearing officer that… No, I'm sorry, I'm saying prior interaction, the events of the first shift where everybody agrees that's what he did. Well, I think what he was talking about in the complaint, if I'm reading it correctly, is that what Roberson was arguing is that he had been awakened repeatedly throughout the morning and that's why he was tired in the afternoon. So then he fell asleep, he claims, and tied himself to that story, but he admits that he was completely covered with a blanket during his deposition. And that is the key factual distinction that the district court ignored, was mentioned and ruled on by the report and recommendation. So it's a purely legal issue as to whether or not the district court properly addressed that and ruled in denying the qualified opinion. Thank you, counsel. Thank you.